UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JULIA HEFFELFINGER, | CASE NO. 1:10CV2892 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Julia Heffelfinger, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the decision of the Commissioner is affirmed.

I.  **PROCEDURAL AND FACTUAL HISTORY**

On November 16 and 20, 2006, Plaintiff filed applications for DIB and SSI alleging disability beginning December 1, 2003.  ECF Dkt. #11 at 171-191.[1]  The SSA denied Plaintiff's applications initially and on reconsideration.  *Id.* at 116-119. Plaintiff filed a request for an administrative hearing, *Id.* at 71-72, and on April 2, 2009, an Administrative Law Judge ("ALJ") conducted an administrative hearing *via* video conference where Plaintiff and Kerry Skillin, a vocational expert ("VE"), offered testimony.  *Id.* at 88-115.  On April 27, 2009, the ALJ issued a Decision denying benefits.  *Id.* at 73-87.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id.* at 54-56.

On December 22, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On July 11, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #13. On October 11,

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

2011, with leave of court, Defendant filed a brief on the merits. ECF Dkt. #16. On November 25, 2011, a reply brief was filed. ECF Dkt. #17.

**II.** **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from obesity, bilateral carpal tunnel syndrome, sleep apnea, osteoarthritis in her right knee, low back pain, and depression, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). *Id.* at 78. The ALJ further found that Plaintiff met the insured status requirements through September 30, 2004. *Id.* The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926). *Id*. at 79.

The ALJ ultimately found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except she can only perform simple, unskilled work that requires math skills at no more than a fifth grade level; she needs the ability to change position from sitting or standing or back at will; she cannot perform a job that requires the use of foot pedals or controls; she can occasionally climb ramps and stairs, stoop, crawl, kneel, or crouch but she should never climb ladders, ropes, or scaffolds or work at heights; she can no more than frequently use her hands for grasping, twisting, or pinching; she should avoid exposure to extreme cold or vibrations. *Id.* at 79-80.

Although the ALJ found that Plaintiff could not perform her past relevant work, he determined that Plaintiff could perform the representative occupations of surveillance system monitor, DOT 379.367-010; information clerk, DOT 237.367-014; and telephone solicitor, DOT 299.357-014, and, therefore, she had not been under a disability as defined by the SSA and was not entitled to benefits.

**III.** **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in

-2-

"substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v.*

-3-

*Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

Plaintiff contends that the ALJ committed three prejudicial errors. First, Plaintiff argues that the ALJ failed to provide a reasonable explanation for his failure to credit the opinions of an examining physician and a non-examining physician. Second, Plaintiff contends that the ALJ improperly characterized her educational level. Third, Plaintiff argues that the ALJ erred when he relied upon the VE's testimony at step five, because the VE's testimony was at odds with the Dictionary of Occupational Titles ("DOT").

Plaintiff, who was 32 years of age on the day of the hearing, testified that she is six feet tall and weights 444 pounds. ECF Dkt. #11 at 93. Plaintiff contends that her weight fluctuates due to a fibroid. She is a high school graduate, and can read and write. Although Plaintiff drives occasionally, she cannot work due to pain, and an inability to concentrate, sit and stand.

With pain medication, Plaintiff's pain ranges from seven out of ten to nine out of ten. *Id.* at 98. Plaintiff wears splints for her carpal tunnel syndrome, and a CPAP machine to treat her sleep apnea. *Id.* at 99. Despite treatment, Plaintiff contends that she still cannot sleep, and that she is tired all of the time. She also suffers pain in her right knee and leg.

According to her testimony, Plaintiff is in constant pain, and she never has a good day. *Id.* at 103. She can sit and stand for less than ten minutes, and she experiences pain when she lifts a gallon of milk. Personal hygiene is difficult. *Id.* at 105. Physical therapy increases her pain, and, when she attempted physical therapy, "all [she] did was cry." *Id.* at 106. She experiences no side effects from her medication. *Id.* at 99.

-4-

In addition to her physical problems, Plaintiff experiences anxiety and depression as a result of abuse she suffered as a child. *Id*. at 100. She attends counseling on a weekly basis. Friends cook, do her laundry, and grocery shop with her. *Id*. at 101. Plaintiff uses a motorized cart when she shops. *Id*. at 106. She receives state disability and food stamps. *Id*. at 97. Insurance will not approve gastric bypass surgery because it is considered cosmetic in nature. *Id*. at 107.

Turning to the arguments advanced in this appeal, Plaintiff first contends that the ALJ erred in not providing a reasonable explanation for his refusal to adopt the findings of two non-treating physicians. Plaintiff concedes that there is no treating physician in this case. As a consequence, the ALJ relied upon evidence provided by non-treating physicians to conclude that Plaintiff was not disabled.

20 C.F.R. 416.927, captioned "Evaluating opinion evidence," reads, in pertinent part:

(ii) When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (e) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Plaintiff first contends that the ALJ erred when he failed to provide a reasonable explanation for rejecting the opinion of Sudhir Dubey, Psy.D. Dr. Dubey examined Plaintiff on September 12, 2007, and completed a six-page disability assessment report for the Bureau of Disability Determination. *Id*. at 500-505. According to the assessment, Plaintiff exhibited borderline

intellectual functioning and a Global Assessment of Functioning ("GAF")[2] score of 60. *Id*. at 504.

Dr. Dubey reached the following conclusions regarding Plaintiff's work related mental abilities:

> 1. The claimant's mental ability to relate to others, including fellow workers and supervisors, is mildly impaired by her symptoms. She was able to relate to the examiner, if given simple and complex questions and appropriate time to respond. She did not evidence emotional lability or constriction at this time.
>
> 2. The claimant's mental ability to understand, remember, and follow instructions is moderately impaired. She was able to understand the questions that were posed during the course of the evaluation as long as the language was kept basic. She did evidence short-term memory deficits during the assessment. She was able to carry out simple requests.
>
> 3. The claimant's mental ability to withstand stress and pressure associated with day-to-day work activity is moderately impaired. She evidenced emotional stability at this time in relation to her symptomatology during the evaluation period. It is quite likely that in the work environment, when faced with dealing with others and expectations, she would be unable to maintain attention, concentration, and pacing to complete complex tasks.
>
> 5. The claimant's mental ability to has mental ability to manage her own funds since she demonstrated adequate insight into her current situation. Judgment, as to prioritizing activities, in order to maintain the most basic functions, appeared to be appropriate. She is attempting to budget and manage her finances, given the financial situation that she is currently facing. She would not need assistance to manage money in her best interest.

*Id*. at 504-505.

Plaintiff contends that the ALJ failed to provide a reasonable explanation for rejecting Dr. Dubey's conclusions, however, the ALJ in this case adopted Dr. Dubey's opinion. For instance, in his "paragraph B" analysis, the ALJ wrote:

> In activities of daily living, the claimant has mild restriction. The claimant has reported that she lived alone and was able to take care of her own activities of daily living. In social functioning, the claimant has mild difficulties. She can be irratable and upset at times, but she has friends and is engaged to be married. With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant has a history of learning disability that makes it difficult for her to concentrate on detailed tasks.

---

[2]The GAF is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, *e.g.*, how well or adaptively one is meeting various problems-in-living. A score of 51 - 60 indicates moderate symptoms.

*Id*. at 79. In formulating Plaintiff's RFC, the ALJ undertook a detailed review of Dr. Dubey's assessment. *Id*. at 83. As a matter of fact, the ALJ rejected the opinion of another psychologist, Douglas Pawlarczyk, Ph.D., who opined that Plaintiff was only mildly impaired with respect to concentration, persistence, and pace, because that opinion was at odds with Dr. Dubey's assessment. *Id*. at 85.

Plaintiff contends, without further explanation, that Dr. Dubey's opinion was more restrictive that the RFC formulated by the ALJ. Plaintiff's contention appears to be based upon a misinterpretation of Dr. Dubey's conclusions with respect to the degree of her limitations. At the hearing, Plaintiff's counsel posed the following hypothetical to the VE, "A hypothetical question based upon [Dr. Dubey], the CE examiner in Exhibit 16F, he indicated that he expected that, when faced, when dealing with others and expectations, [Plaintiff] would be unable to maintain attention and concentration and pace, pacing to complete tasks. Would it be correct in assuming that that [sic] would prevent competitive employment?" *Id*. at 111. To the contrary, Dr Dubey concluded that "[i]t is quite likely that in the work environment, when faced with dealing with others and expectations, [Plaintiff] would be unable to maintain attention, concentration, and pacing to complete *complex* tasks." *Id*. at 504-505 (emphasis added). Here, the ALJ limited Plaintiff to simple unskilled work, consistent with Dr. Dubey's assessment. Accordingly, Plaintiff's first argument, as it relates to the opinion of Dr. Dubey, is not well taken.

Next, Plaintiff asserts that the ALJ did not provide an explanation for rejecting the opinion evidence provided by non-examining physician, Leslie Green, MD. Dr. Green completed a physical residual functional capacity assessment on May 14, 2007. *Id*. at 458-465. In the assessment, Dr. Green concluded that Plaintiff was capable of light work but could never climb ramps or stairs. *Id*. at 460. The ALJ found that Plaintiff was only capable of sedentary work and could occasionally climb ramps or stairs. Plaintiff contends that the ALJ failed to provide a reasonable explanation for his failure to adopt Dr. Green's opinion regarding climbing ramps and stairs.

The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

-7-

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a). If someone can do light work, the Regulations instruct that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

In the Decision, the ALJ rejects Dr. Green's conclusion that Plaintiff is capable of light work, because "Dr. Green was unable to evaluate the ongoing limitations from the claimant [sic] low back pain, right knee pain and bilateral carpal tunnel syndrome that further limited the claimant to sedentary work." ECF Dkt. #11 at 85. While it is true that the ALJ does not specifically address his decision to reject Dr. Green's finding with respect to climbing ramps and stairs, the ALJ did observe more generally that "the objective [sic] finds no severe degenerative changes in her joints and none of her orthopedic doctors have recommended more than physical therapy and NSAID[3] medication for the relief of her pain." *Id*. at 85. Furthermore, in rejecting Plaintiff's claims regarding the intensity, persistence, and limiting effects of her pain, the ALJ relied upon the fact that Plaintiff has not been referred for steroid injections, a surgical recommendation for either her back or wrist pain, and she has not been referred to a pain clinic for a stronger pain treatment. *Id*.

Although the ALJ did not provide a specific reason for rejecting Dr. Green's opinion regarding climbing ramps and stairs, his failure to do so constitutes harmless error. The remainder of the Decision establishes that the ALJ credited Plaintiff's claims of pain, but did not believe her pain prevented her from performing sedentary work. Furthermore, Plaintiff has not shown that she would not be able to perform the representative jobs identified by the VE if the climbing ramps and stair limitation was included in her RFC. Accordingly, Plaintiff's first argument, as it relates to Dr. Green, lacks merit.

Next, Plaintiff contends that the ALJ erred when he concluded that Plaintiff had a high school education, with the exception that she had fifth-grade math skills. In her brief, Plaintiff writes that "high school education and above" means abilities in reasoning, arithmetic, and language

---

[3]NSAID is a common abbreviation for Non-steroidal Anti-inflammatory Drug.

-8-

skills acquired through formal schooling at a twelfth grade level or above. The SSA considers that someone with these educational abilities can do semi-skilled through skilled work. 20 C.F.R. 404.1564(b)(4).

Although Plaintiff testified that she was a high school graduate, "[a] numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." *Skinner v. Sec'y of HHS*, 902 F.2d 447, 450 (6th Cir.1990). Here, several physicians diagnosed Plaintiff with borderline intellectual functioning. For instance, Plaintiff underwent a Wide Range Achievement test administered by James F. Sunbury, Ph.D on February 6, 2007. ECF Dkt. #11 at 492-498. Plaintiff's IQ scores were within the borderline range. *Id.* at 497. She received the following grade scores: word reading - 8.9; sentence comprehension - 8.9; spelling 7.2; math computation - 5.4. *Id.* at 495. Although her school records indicate that she scored in the 88th percentile in reading; the 87 percentile in math; and the 89th percentile in written language, they further indicate that she was in special education classes. *Id.* at 250. According to her individualized education program, "[Plaintiff's] academic scores range from 6.4 to 9.4 grad [sic] equivalent." *Id.* at 253.

However, any errant conclusion regarding Plaintiff's educational level by the ALJ in this case is harmless error because the ALJ limited Plaintiff's RFC to simple unskilled work based upon her mental problems. To the extent that Plaintiff's RFC accurately reflected her intellectual capability, based upon her problems with concentration, persistence, and pace, Plaintiff's second argument must fail.

Finally, Plaintiff contends the ALJ erred by relying on vocational testimony that conflicted with the DOT. The hypothetical question the ALJ presented to the VE reflected an individual who was limited to simple unskilled work that requires math skills at no more than a fifth grade level. However, the DOT occupations listed by the VE are coded as "reasoning level three" jobs. ECF Dkt. #13 at 633-645.

The DOT assigns each job a General Educational Development score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL

688702 (G.P.O.) (4th ed., rev'd 1991). The GED scale is composed of three divisions-reasoning development, mathematical development, and language development. *Id.*

Reasoning Development Level 1 provides: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Reasoning Development Level 2 provides: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* Reasoning Development Level 3 jobs require an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* Because Plaintiff's RFC limits her to simple unskilled work, she argues that the VE's testimony conflicts with the DOT and demonstrates that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence.

First, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). In other words, the reasoning levels listed in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs. See, e.g., *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir.1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); see also *French v. Astrue*, No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D.Ky. Jan.20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p. Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified to satisfy his burden at step five of the sequential evaluation process despite the DOT's listing of reasoning level three for such jobs.

Second, even if there was an apparent conflict between the VE's testimony and the DOT, the ALJ met his burden of inquiry under SSR 00–4p. The ALJ inquired, "Your testimony has been

-10-

consistent with the [DOT] and/or professional experience?" The VE responded, "Yes, Your Honor." ECF Dkt. #11 at 111. The ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00–4p. Where the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir.2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; see also SSR 00–4p ( "If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

In this case, the ALJ asked the VE if his testimony was consistent with the DOT and the VE responded in the affirmative. After the VE responded, the ALJ turned the questioning over to Plaintiff's counsel. Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. See *Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir.2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.* Accordingly, Plaintiff's final argument does not have merit.

-11-

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: March 23, 2012

            */s/George J. Limbert*
            GEORGE J. LIMBERT
            UNITED STATES MAGISTRATE JUDGE